The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| MARTIN DESIGNS, INC., | ) CASE NO. 08-60431 |
| Debtor. | ) |
| | ) ADV. NO. 09-6037 |
| MD ACQUISITION LLC et al. | ) |
| Plaintiffs, | ) JUDGE RUSS KENDIG |
| | ) |
| v. | ) **MEMORANDUM OF OPINION ON PLAINTIFF'S MOTION TO REMAND (NOT INTENDED FOR PUBLICATION)** |
| MARTIN L. MYERS et al., | ) |
| Defendants. | ) |

    Now before the Court is Plaintiff's Motion to Remand, filed by Plaintiff MD Acquisition LLC in the U.S. District Court for the Southern District of Ohio. That court transferred the venue to this Court on February 25, 2009. For the reasons set forth below, the Court grants Plaintiff's motion.

    The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

This case has endured a long and twisted odyssey to this Court, and sadly, its journey is not yet finished.

Plaintiff MD Acquisition, LLC is a Delaware limited liability company with its principal place of business in New York, New York. Plaintiff and Debtor Martin Designs, Inc. is an Ohio corporation with its principal place of business in Ashland, Ohio.

Defendant Martin Myers ("Myers" or "Defendant"[1]) resides in Ashland, Ohio. Defendant Pet Brands is an Ohio corporation with its principal place of business in Columbus, Ohio. Prior to October 9, 2003, Defendant was the founder, majority owner, CEO, and a director of Martin Designs.

On October 9, 2003, Myers, Martin Designs, and MD Acquisition executed three related contracts, which all parties concede were part of, and were intended to be part of, a single integrated transaction. The first of these contracts was a "Stock Purchase Agreement", under which MD Acquisition acquired a controlling interest of 70% of the outstanding stock of Martin Designs, Myers retained a 25% minority interest, and the modest 5% of the stock remaining was reserved for potential allocation to Martin Designs employees. The second contract was a "Stockholders' Agreement," and the third was an "Executive Employment Agreement."

Plaintiffs filed a seven-count complaint against Defendants in the Franklin County Court of Common Pleas (the "state court") on September 26, 2005. The first count asked for rescission of the Stock Purchase Agreement that Myers and MD Acquisition signed in 2003. The remaining six counts, all in the alternative to the rescission count, alleged breach of the Stock Purchase Agreement, breach of the Stockholders' Agreement, breach of the Executive Employment Agreement, misappropriation of trade secrets and confidential information, tortious interference with contractual relations on the part of Pet Brands, and unjust enrichment of Pet Brands. Pet Brands filed an answer and had limited participation in the state court action, but is largely out of the picture at this stage. On February 24, 2006, Defendant filed both an answer and counterclaims in the state court action. Defendant's first two counterclaims include breach of the Stock Purchase Agreement by MD Acquisition and breach of fiduciary duty by MD Acquisition. Defendant's third counterclaim is an indemnification claim against Martin Designs, seeking to cover the costs of this litigation.

---

[1] Although two defendants were named in this adversary, as well as in the state court case which ultimately became this adversary, the other, Pet Brands, Inc., has ceased active participation in this case and was all but unmentioned at either party at the pretrial conference on this adversary. For the balance of this opinion, "Defendant" refers exclusively to Martin Myers.

2

Litigation progressed in the state court for more than two and a half years, from September of 2005 until May of 2008. This litigation included five motions for partial summary judgment, two motions for judgment on the pleadings, six motions incident to discovery, two contested motions to continue, and one show cause order against Plaintiffs, on which a hearing was scheduled for the same day Debtor filed for bankruptcy. Some of these motions were more consequential than others.

On March 14, 2007, the state court issued an opinion granting Defendant partial summary judgment on his counterclaims–specifically, granting him summary judgment on his indemnity counterclaim against Martin Designs. Plaintiffs appealed in the Ohio appellate court system. Their appeals were fruitless, and the matter ultimately returned to the state court more than ten months later. On January 24, 2008, the state court entered an order requiring Martin Designs to pay Myers $567,580.39 for attorneys' fees and expenses incurred over the course of this protracted litigation. However, Martin Designs was unable to do so; on December 15, 2007, twenty-four hours after the Ohio Supreme Court denied review of Plaintiffs' appeal on the indemnification ruling, Martin Designs' lender had cut off its operating line of credit.

On February 21, 2008, Martin Designs filed for protection in this Court under chapter 7 of the Bankruptcy Code. On May 20, 2008, Martin Designs removed the state court action to the U.S. District Court for the Southern District of Ohio at Columbus. Once there, Plaintiffs moved to transfer venue to the Northern District of Ohio for assignment to this Court. Defendant opposed that motion and filed the Motion for Abstention and Remand currently before this Court. The latter motion is before this Court because, in an opinion and order dated February 23, 2009, Judge Holschuh of the Southern District of Ohio entered an opinion granting Plaintiffs' motion to transfer venue and denying without prejudice Myers' Motion for Abstention and Remand, holding that the determination of legal issues essential to resolving Defendant's motion–most notably the determination of whether the instant proceeding is a "core" proceeding–was committed to the bankruptcy courts. This case was thus integrated into an adversary proceeding arising in Debtor's bankruptcy case. Defendant continued to prosecute his Motion for Abstention and Remand, filing a supplemental memorandum in support on April 10, 2009. Plaintiffs filed a response on April 24, 2009.

## LEGAL ANALYSIS

### I. Mandatory Abstention

Defendant first asks this Court to abstain from hearing this proceeding and remand it to the state court on the basis that abstention is mandatory given the nature and procedural history of this case. Mandatory abstention in bankruptcy proceedings is governed by 28 U.S.C. § 1334(c)(2), which provides in full:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been

3

commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Sixth Circuit has interpreted this provision thus:

> [f]or mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.

Lowenbraun v. Canary et al. (In re Lowenbraun), 453 F.3d 314, 320 (6th Cir. 2006).

The first prong is met because all seven claims in the complaint and all three counterclaims in the answer arise under state law. The fact that other claims might be added later or that the Bankruptcy Code might interfere with state court proceedings or collection processes is irrelevant; the Bankruptcy Code may well have such effects, but Lowenbraun requires only that the proceeding be *based* on state law claims or causes of action–it does not require that proceedings be completely unaffected by federal law. For instance, as acknowledged by Defendant in his reply brief before the Southern District of Ohio, Defendant cannot actually seek payment upon his indemnity claim against Martin Designs in state court without relief from the automatic stay of 11 U.S.C. § 362(a). (Reply Mem. of Martin L. Myers in Supp. of Mot. for Abstention and Remand 6.) However, this does not change the law on which the proceeding is "based." In the case of Defendant's indemnity claim, that law is Ohio Rev. Code § 1701.13(E), as well as the contract law of the state of Ohio.

The second prong is met because not only is there no federal question jurisdiction (as all of the claims in this action are state law claims), but there is also no federal jurisdiction based on diversity of citizenship, as both Defendants and Plaintiff Martin Designs are Ohio citizens. See U.S. Fidelity & Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1089 (6th Cir. 1992). The question of whether 28 U.S.C. § 1334, the bankruptcy jurisdiction statute, might extend federal jurisdiction to these claims is irrelevant for the specific purposes of this analysis, as the question under 28 U.S.C. § 1334(c)(2) and Lowenbraun is whether a federal jurisdictional basis exists *other* than bankruptcy jurisdiction. Given the lack of federal question or diversity jurisdiction, there exists no federal jurisdictional basis outside the bankruptcy.

The Franklin County Court of Common Please is a state forum of appropriate jurisdiction, so the third prong is met.

However, the fourth ground for mandatory abstention, namely, being capable of timely adjudication in a state court, is not satisfied here because of the application of the automatic stay. In Dunkirk Ltd. Partnership v. TJX Companies, Inc., 139 B.R. 643 (N.D. Ohio 1992), the district court held that when the unmodified automatic stay applies, it almost *per se* renders a case incapable

4

of timely adjudication in any other forum. Defendant mischaracterizes the procedural posture of this case, and makes some incorrect assertions in his argument with respect to how this case could proceed in state court without modification of the stay. Defendant is correct that the stay would prevent payment upon the indemnification claim upon which Defendant has already prevailed in state court. The stay is of broader applicability than that, however. The trial itself in state court also cannot proceed absent relief from the stay: Debtor's petition

> operates as a stay, applicable to all entities, of–
> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). The stay thus prevents the continuation of any judicial proceeding against the debtor, even one that was commenced before the petition date. Myers has not moved for relief from stay in this Court. Such relief would be needed for any litigation to proceed in the state court. See, e.g., Boone Coal and Timber Co. v. Polan, 787 F.2d 1056 (6th Cir. 1986) (assuming without stating that relief from automatic stay was necessary along with remand in order for litigation to proceed in state court); Murray v. On-Line Business Systems (In re Revco D.S., Inc.), 99 B.R. 768 (N.D. Ohio 1989) (same). Therefore, this proceeding, at least with respect to claims against Debtor, is not only incapable of timely adjudication in the state court–it is incapable of *any* adjudication in the state court. The Court allows for the possibility that some proceedings in the state court could continue notwithstanding the automatic stay if it were established that the proceedings were exclusively between non-debtor parties MD Acquisition and Defendants, though no briefing has been submitted on that issue and the Court renders no decision on the applicability of the stay to exclusively non-debtor claims, to the extent that any of the claims remaining could be fairly characterized as such in substance. In addition, Debtor's own claims can be litigated without any modification of the stay, since § 362(a)(1) applies to actions, proceedings, and claims *against* the debtor. However, both parties have assumed, and with justification, that these proceedings should stay together, as they arise from a single set of operative facts. The standard for mandatory abstention refers to "proceeding" in the singular, and the Court cannot justify viewing this proceeding as multiple "proceedings" in order to consider remanding some and not others. This is one proceeding, and if a part of it cannot be adjudicated at all in the state court, then the proceeding cannot be timely adjudicated in the state court.

Since all elements of the mandatory abstention test must be met for abstention to be mandatory–the test does not allow for an abundance of one factor to compensate for the absence of another–it does not immediately matter whether the fifth element of the test is also satisfied, namely, that this proceeding be a non-core proceeding. However, the Court has sufficient information before it to render its holding on this issue, and this issue may well become relevant should the predicate of the Court's timely-adjudication analysis change.

5

Fifth and finally, this proceeding is not a core proceeding. "A core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." Sanders Confectionery Prods., Inc. v. Heller Financial, Inc., 973 F.2d 474, 483 (6th Cir. 1992); see also Mich. Employment Security Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.), 930 F.2d 1132, 1144 (6th Cir. 1991). Core proceedings are described and enumerated at 11 U.S.C. § 157(b)(2). Non-core proceedings, by contrast, "are civil proceedings which do not invoke a substantive right created by bankruptcy but nevertheless fall within the jurisdiction of the bankruptcy court because they share a nexus with the bankruptcy case and will have some 'conceivable effect' on the administration of the debtor's estate." Honigman, Miller, Schwartz and Cohn, LLP. v. Adell (In re John Richards Homes Bldg. Co., L.L.C.), 405 B.R. 192, 209 (E.D. Mich. 2009). Plaintiffs argue that this proceeding raises a number of issues that make it a core proceeding. Specifically, they cite 11 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate"); § 157(b)(2)(B) ("allowance or disallowance of claims against the estate ..."); § 157(b)(2)(E) ("orders to turn over property of the estate"); and § 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate"). However, none of these categories stretch as far as Plaintiffs wish; if they did, they would overwhelm the criteria of the Sixth Circuit in Sanders Confectionery and Wolverine Radio, as nearly any civil litigation in which a debtor has any interest could be characterized as a "matter concerning the administration of the estate" or an "other proceeding affecting the liquidation of the assets of the estate." The fact that the resolution of an action may result in more or fewer assets in the estate does not make that action a core proceeding. See Talisman Marina, Inc. v. Heartstone Developers, LLC (In re Talisman Marina, Inc.), 335 B.R. 338, 341 (Bankr. M.D. Fla. 2008). In addition, these are not core proceedings regarding allowance or disallowance of claims against the estate nor involving orders to turn over property of the estate; each of these corresponds to a specific provision of the Bankruptcy Code–e.g., 11 U.S.C. § 502 (allowance of claims or interests), 11 U.S.C. § 542 (turnover of property to the estate), etc.–and thus involves rights created by federal bankruptcy law. The substantive rights at issue in this litigation–rescission, breach of contract, breach of fiduciary duty, tortious interference with contractual relations, unjust enrichment, indemnity–all arise under state law and could exist outside the bankruptcy.

In similar circumstances, courts in this circuit have held that proceedings were not core proceedings. In 901 LLC v. Skyline Concrete Floor Corp. (In re Skyline Concrete Floor Corp.), 2008 WL 114462 (E.D. Mich Jan. 8, 2008), the district court held:

> In this case, all of the claims asserted in this adversary proceeding do not invoke substantive rights created by federal bankruptcy law and could exist outside of the bankruptcy. Indeed, claims identical to those in this adversary proceeding were pending in the Oakland County Circuit Court and set for trial prior to the commencement of Skyline's Chapter 11 proceeding. Therefore, the Court concludes that the claims involved in this adversary proceeding are non-core.

Id. at *2. With the minor edit of changing the identity of the state court in which the state court action was pending when the bankruptcy was filed, this Court could write this passage verbatim with

6

respect to the state court action in the instant case. This proceeding is therefore non-core as well;

> if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy, then it is not a core proceeding ... [s]uch a proceeding may be related to the bankruptcy pursuant to sections 1334(b) and 157(c), but it would not be a core proceeding within the meaning of section 157(b).

Wolverine Radio, 930 F.2d at 1144. This proceeding is related to Debtor's bankruptcy case, but it is not a core proceeding arising under or arising in it.

## II. Permissive Abstention & Equitable Remand

Defendant also asks the Court to find permissive abstention and/or equitable remand appropriate regardless of whether the Court is required to abstain under its mandatory abstention analysis. Permissive abstention is provided for in 28 U.S.C. § 1334 (c)(1):

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Since § 1334(c)(1) explicitly includes "proceeding[s] arising under title 11 or arising in ... a case under title 11," the fact that this is a core proceeding is irrelevant here. In addition, nothing in 28 U.S.C. § 1334(c)(1) requires the timely motion of a party. Instead, courts look to a number of factors in determining whether permissive abstention under § 1334(c)(1) is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;
> (2) the extent to which state law issues predominate over bankruptcy issues:
> (3) the difficulty or unsettled nature of the applicable law;
> (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than the form of an asserted core proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of the bankruptcy court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

7

(11) the existence of a right to a jury trial; and
(12) the presence in the proceeding of non-debtor parties.

Delphi Automotive Systems, LLC v. Segway, Inc., 519 F.Supp.2d 662, 670-71 (E.D. Mich. 2007). This is a multi-factor balancing test, not a rule in which every element must be satisfied (contra the five-part rule in Lowenbraun for mandatory abstention); not all factors need to weigh in favor of permissive abstention in order for it to be appropriate. In Delphi, the debtor-plaintiff sued Segway in Michigan state court for breach of contract, the defendant removed to the district court, and debtor-plaintiff moved for remand to state court. Permissive abstention was found to be appropriate because state law claims predominated over the bankruptcy issues, the state law claims were only indirectly related to the bankruptcy case, there was no independent basis for bankruptcy court jurisdiction other than 28 U.S.C. § 1334, the right to a jury trial would be preserved on remand, and the defendant was a non-debtor party.

Meanwhile, equitable remand in bankruptcy cases is governed by 28 U.S.C. § 1452(b), which provides, in relevant part, simply that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." Grounds for equitable remand under this provision have been held to include the following:

(1) duplicative and uneconomical use of judicial resources in two forums;
(2) prejudice to the involuntarily removed parties;
(3) forum non conveniens;
(4) the state court's ability to handle a suit involving questions of state law;
(5) comity considerations;
(6) lessened possibility of an inconsistent result; and
(7) the expertise of the court in which the matter was originally pending.

Mann v. Waste Management of Ohio, Inc., 253 B.R. 211, 214-15 (N.D. Ohio 2000). While these grounds do not align perfectly with those for permissive abstention, "[t]he analysis under § 1334(c)(1) is largely the same as under § 1452(b)." In re National Century Fin. Enters., Inc. Inv. Litig., 323 F.Supp.2d 861, 885 (S.D. Ohio 2004); see also Mann at 215 ("Permissive abstention under § 1334(c)(1) and equitable remand under § 1452(b) are essentially identical.").

In the instant case, state law issues predominate over bankruptcy issues, as the Court has already explained as part of its mandatory abstention analysis in Part I, supra. Likewise, the Court has already found that there is no jurisdictional basis for this Court to hear these causes of action apart from 11 U.S.C. § 1334. These are non-core proceedings.

In addition, more factors, absent from the mandatory abstention analysis, weigh in favor of permissive abstention. Severing the state law claims from the core bankruptcy matters raised here is feasible, as the original action arose entirely under state law, and the core functions of the bankruptcy court need not be invoked in these proceedings until a final order is reached in the state

8

court action. This Court is aware of Defendant's attempt to collect property of the estate due to the indemnity judgment upon which he has already prevailed, but Defendant is already aware of the automatic stay and has conceded that it applies to Debtor.

Furthermore, non-debtor parties are present in the litigation–in fact, they are the principal players. MD Acquisition and Martin Myers are the lead actors in this drama; Martin Designs and Pet Brands are the sidekicks. The majority of the claims and counterclaims yet unresolved are asserted by these two actors against the other.

The Court is less convinced of Defendant's argument that Plaintiffs are forum-shopping by seeking to transfer this action into the bankruptcy court. It is true that Plaintiffs' appeal of the state court's indemnification order failed, and that Debtor filed for bankruptcy the very day that the state court was to hold a show cause hearing against Plaintiffs for their noncompliance with that indemnification order. It is also true that Plaintiffs have stated in their pleadings that Debtor may now seek to amend its complaint to add claims that would arise under the Bankruptcy Code. However, while Defendant has prevailed on the only two of the ten counts between the parties that have been legally resolved thus far (his own counterclaim for indemnity and Plaintiffs' count of rescission), it does not follow that Plaintiffs' removal is an attempt to escape a court in which litigation had been going poorly for them. It is not uncommon for companies (or individuals) to delay bankruptcy filings for as long as possible, nor is it uncommon for a judicial proceeding to force a party's hand. The fact that the state court proceeding that forced Debtor's hand here was a show cause hearing is somewhat worrisome, but this Court will not leap to see forum-shopping when the much more mundane and benign (from this Court's perspective, anyway) explanation of simple insolvency is clearly warranted by the facts. Debtor got hit by a massive judgment. Its lender pulled the plug on its credit facility. Debtor filed for bankruptcy. Eight of the ten claims in this litigation remain unresolved; Defendant sought summary judgment from the state court on six of them and succeeded on two, one of which was a successful defense of a rescission claim. Rescission is among the most difficult remedies for any shareholder to win. The fact that Plaintiff lost on that claim does not suggest that any attempt to change venue from that court is shopping for a better forum.

Set against these factors weighing in favor of remand–state law issues predominating over bankruptcy issues, no federal jurisdictional basis outside of bankruptcy, the non-core substance of the proceeding, the feasibility of severing the state law claim from federal court enforcement, and the existence of the right to a jury trial in state court–is the effect on the efficient administration of this estate if this Court recommends abstention. The same fact that weighed against Defendant in the Court's mandatory abstention analysis weighs against him here: the automatic stay under 11 U.S.C. § 362(a) applies to at least part of the proceeding under consideration, and Defendant has not moved to modify it.

However, while the automatic stay may pose some problems in the state court action, the Court is unconvinced that keeping this litigation here would be *more* efficient. This case has been pending in the Ohio state court system for nigh on four years now. The state court is familiar with the parties, the facts, the legal issues, and the docket, the latter of which is voluminous.

9

In addition, this Court has a seldom-used tool in its toolbox that will assist the state court more than this one in this circumstance: *sua sponte* modification of the automatic stay. Bankruptcy courts have the power to modify the automatic stay *sua sponte*. Elder-Beerman Stores Corp. v. Thomasville Furniture Indus., Inc. (In re Elder-Beerman Stores Corp.), 195 B.R. 1019, 1023 (Bankr. S.D. Ohio 1996) (collecting numerous cases from other circuits). In this case, it will expedite the efficient administration of the estate more for this Court to grant a limited modification of the automatic stay and allow the case to proceed in the court where it has been pending since September of 2005 than to attempt to familiarize itself with years of litigation history just to duplicate the knowledge of this case that the state court already has. The automatic stay is thus modified as follows: all claims and counterclaims in the state court action may proceed until the entry of final orders. The stay is expressly *not* modified to allow collection or other acts to obtain property of the estate or property from the estate, or to exercise control over property of the estate, whether on the basis of interim orders (including the indemnity order of January 24, 2008) or final orders, and is not modified in any other fashion.

The Court will concurrently enter an order consistent with this opinion.

# # #

**Service List:**

Heather Stutz
Squire Sanders and Dempsey LLP
1300 Huntington Center
41 S High St
Columbus, OH 43215

John R Gall
Squire Sanders & Dempsey
41 S High St., Suite 1300
Huntington Center
#1300
Columbus, OH 43215

Sherri Lynn Dahl
Squire Sanders & Dempsey
4900 Key Tower
127 Public Square
Cleveland, OH 44114

Alan M Koschik
Brouse McDowell, L.P.A.
1001 Lakeside Ave
Suite 1600
Cleveland, OH 44114

James E. Arnold
Law Office of James E. Arnold
Ste. 1400
471 East Broad Street
Columbus, OH 43215

Scott J Stitt
James E. Arnold & Associates
115 W. Main St.
Fourth Floor
Columbus, OH 43215

Stephen C. Fitch
Chester, Wilcox & Saxbe
Ste 1000
65 East State Street
Columbus, OH 43215

Anna M. Wachtell
L. William Erb
Weston Hurd Curley Patterson & Bush
#1750
88 East Broad Street
Columbus, OH 43215

Martin L Myers
1651 King Rd.
Ashland, OH 44805

Josiah L Mason
Canton
153 W Main St
PO Box 345
Ashland, OH 44805-2219